UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

MICHAEL MARTINEZ,                        :

                    Plaintiff,           :

        - against -                      :

JAN GOLDING, in his Individual Capacity,:
MICHAEL ROGAN, in his Individual and
Official Capacities, and MICHAEL MILZA, :
in his Individual Capacity,
                                         :

                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - X

05 Civ. 7433 (WCC)

**ECF CASE**

**OPINION**
**AND ORDER**

**A P P E A R A N C E S :**

THE LAW OFFICE OF JAMES B. LeBOW
**Attorneys for Plaintiff**
488 Madison Avenue, Suite 1100
New York, New York  10022

JAMES B. LeBOW, ESQ.
DANIELLE ZEIGER, ESQ.

        Of Counsel

ANDREW M. CUOMO
ATTORNEY GENERAL OF THE STATE
  OF NEW YORK
**Attorneys for Defendants**
  **Jan Golding and Michael Rogan**
120 Broadway
New York, New York  10271

REBECCA ANN DURDEN, ESQ.
  Asst. Attorney General

        Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Michael Martinez brings this action against state investigators Jan Golding[1] and Michael Rogan[2] and Assistant District Attorney Michael Milza[3] for false arrest, malicious prosecution and conspiracy to violate plaintiff's Fourth Amendment right to be free from unreasonable seizures, pursuant to 42 U.S.C. § 1983. Specifically, on February 8, 2004, Golding arrested plaintiff on suspicion of forcible rape, and the District Attorney of Broome County subsequently prosecuted him for the crime of Rape in the First Degree in violation of N.Y. PEN. LAW § 130.35.[4] On August 25, 2004, a jury acquitted plaintiff of the charge, and he now alleges that defendants arrested and prosecuted him maliciously and without probable cause. Golding and Rogan contend that both the arrest and prosecution were supported by probable cause and thus move pursuant to FED. R. CIV. P. 56 for summary judgment seeking dismissal of plaintiff's claims. For the following reasons, their motion is granted. In addition, plaintiff's claims against Milza are dismissed because he is entitled to absolute immunity from suit for any actions taken pursuant to his

---

[1] Golding served as a Trooper in the New York State Division of State Police ("New York State Police") from November 1994 to August 14, 2003 at which time he was promoted to the position of investigator with the Bureau of Criminal Investigations ("BCI") and assigned to the Middletown Police Barracks, where he has worked since. (*See* Defs. Rule 56.1 Stmt. ¶¶ 1, 4-6; Golding Decl. ¶¶ 2, 3.) The BCI conducts investigations of matters that would constitute felonies under the New York Penal Law, which includes sex crimes such as forcible rape. (*See* Defs. Rule 56.1 Stmt. ¶¶ 2, 7; Golding Decl. ¶¶ 2, 3.)

[2] At all relevant times, Rogan was a senior investigator with the New York State Police and Golding's supervisor. (*See* Defs. Rule 56.1 Stmt. ¶ 8; Golding Decl. ¶ 4.) He is now retired. (*See* Defs. Rule 56.1 Stmt. ¶ 9; Rogan Decl. ¶ 2.)

[3] At all relevant times, Milza was an assistant district attorney in Broome County, New York. (*See* Am. Complt. ¶ 5.) No appearance has been filed on behalf of Milza.

[4] N.Y. PEN. LAW § 130.35 provides: "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion . . . ."

1

duties as a prosecutor.

## BACKGROUND

Viewed in the light most favorable to plaintiff,[5] the record reveals the following relevant facts. The complainant[6] alleged that plaintiff, with the assistance of an unidentified male, forcibly raped her on the night of February 4, 2004. (*See* Defs. Rule 56.1 Stmt. ¶¶ 34, 35.)[7] That same night she informed her cousin, Brian Reinhardt, that she had been raped, and the next day Reinhardt called the Middletown barracks of the New York State Police to report the incident. (*See id.* ¶¶ 18-19.) Golding was assigned to investigate the case. (*See* Golding Decl. ¶ 5.)

At the barracks, Golding took the complainant's statement and supporting deposition, according to which the following events transpired.[8] (*See* Defs. Rule 56.1 Stmt. ¶¶ 21, 37; Golding Decl. ¶¶ 5, 9.) The complainant and Reinhardt rented a motel room on the night of February 4, 2004

---

[5] *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) ("'In assessing the record to determine whether there is [a genuine issue of material fact], the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'") (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)); *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486 (2d Cir. 2006) ("We [must] . . . constru[e] the facts in the light most favorable to the non-moving party[] . . . ."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895, 2007 WL 39301, at *5 (S.D.N.Y. Jan. 8, 2007) ("In determining whether a genuine issue of material fact exists, the Court must examine all evidence in the light most favorable to the nonmoving party.").

[6] Although plaintiff disclosed the identity of the alleged rape victim in the Complaint, we will refer to her as "the complainant" for the sake of confidentiality.

[7] Where we cite only Defendants' Rule 56.1 Statement, the corresponding fact is not disputed by plaintiff, who, incidentally, has failed to submit a counter-Rule 56.1 Statement, even after given an opportunity to do so on sur-reply.

[8] We, of course, do not accept her allegations as true, but rather, only the fact that she made such allegations, as the latter is not disputed by plaintiff and is substantiated throughout the record.

and, at approximately midnight, the complainant called plaintiff to "hang out" because she was bored.  (*See* Golding Decl., Ex B.)  When she met plaintiff, he was in his car with another male whom she did not recognize.  She followed them to plaintiff's house in her own car and, when they arrived, plaintiff told them to be quiet because his dad was upstairs sleeping.  They went downstairs to plaintiff's room and watched television.  The complainant sat on the bed near the headboard, plaintiff sat on the foot of the bed and the unidentified individual sat on the floor.

According to the complainant, they all watched television for awhile, and then plaintiff said to his friend that he intended to have sexual intercourse with the complainant, or, as he put it, he "was going to hit that."  Plaintiff then told the complainant several times that they were going to have sex, and the complainant replied, "No we're not" and indicated that she had a boyfriend. Plaintiff responded that it did not matter and said that "'Chrissy and Lizzie let him 'hit it' and they had boyfriends."  After a few minutes, plaintiff approached the complainant on the bed and said, "Yeah, I'm gonna get it tonight."

It was at this point, according to the complainant, that the unidentified male pinned her down by her arms so that her back was flat on the bed.  Plaintiff then pulled his jeans down and removed the complainant's pants and underwear.  While the unidentified individual held her arms down on the bed, plaintiff forced the complainant's legs apart and engaged in forcible sexual intercourse with her. The complainant did not consent to the activity and repeatedly told them to stop.  After hearing noise from upstairs, which they thought was plaintiff's father, plaintiff and the other individual let the complainant free and all three individuals left the house.  According to the complainant, the rape lasted approximately ten minutes.  The complainant drove to the motel where she and her cousin were staying and told him what had happened.  Her cousin called the police the next day.

3

After taking the complainant's statement, Golding escorted her to the Orange Regional Medical Center for a Sex Abuse Nurse Examination ("SANE"). (*See* Defs. Rule 56.1 Stmt. ¶ 41; Golding Decl. ¶ 10.) The SANE examination revealed bruising and possible bite marks to the left wrist, a six inch superficial scratch on the left outer thigh, bruising of the left inner thigh, bruising of the right arm and three small blue bruises on the left ankle. (*See* Defs. Rule 56.1 Stmt. ¶ 49; Golding Decl. ¶ 11.) In addition, the SANE report indicated that the complainant exhibited "redness in the posterior fourchette, vagina and fossa [navicularis] . . . ." (*See* Defs. Rule 56.1 Stmt. ¶ 50; Golding Decl. ¶ 11.) Golding concluded that the injuries were consistent with the complainant's allegation that she had been forcibly raped. (*See* Defs. Rule 56.1 Stmt. ¶ 51; Golding Decl. ¶ 12.)

After analyzing the SANE report and interviewing the complainant, Reinhardt and Chrissy Medina, a friend of the complainant, Golding consulted with his colleagues and several officers of the Middletown Police Department. (*See* Defs. Rule 56.1 Stmt. ¶ 52; Golding Decl. ¶ 13.) According to Golding, the officers all agreed that probable cause existed to arrest Martinez and, on February 8, 2004, Golding made the arrest. (*See* Defs. Rule 56.1 Stmt. ¶¶ 53-54; Golding Decl. ¶¶ 13-14.) Pursuant to a court order, Golding obtained a buccal swab from plaintiff for DNA analysis, which matched the DNA of semen found in the complainant during the SANE examination. (*See* Golding Decl. ¶ 16.)

Thereafter, the District Attorney's Office of Broome County sought an indictment against plaintiff for Rape in the First Degree in violation of N.Y. PEN. LAW § 130.35, and Assistant District Attorney Milza was assigned to prosecute the case. (*See* Am. Complt. ¶ 5.) On February 14, 2004, a grand jury indicted plaintiff for the crime. (*See* Defs. Rule 56.1 Stmt. ¶ 55.) In August 2004, the District Attorney's office tried the case to a jury, which ultimately acquitted plaintiff of the charge.

(*See* Am. Complt. ¶ 2.)  Plaintiff subsequently filed this suit for false arrest, malicious prosecution and conspiracy to violate his Fourth Amendment right to freedom from unreasonable seizures. Golding and Rogan now move for summary judgment on the claims asserted against them.

## DISCUSSION

### I.    Legal Standard

Under Fed. R. Civ. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986).  The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).  The burden rests on the movant to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant.  *See Anderson*, 477 U.S. at 255.  Nevertheless, to defeat a motion for summary judgment, the non-moving party may not rest upon unsubstantiated allegations or conclusory assertions, and summary judgment must be granted against a party when it fails to adequately establish an essential element on which it bears the burden of proof.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### II.    Absolute Immunity of Milza

Plaintiff asserts claims against Milza for malicious prosecution and conspiracy to violate his

Fourth Amendment right, alleging that Milza gathered false evidence, suborned perjury and prosecuted him maliciously and without probable cause.  Despite the fact that plaintiff has offered *no* evidence in support of these allegations, it is axiomatic that state prosecutors are absolutely immune from personal liability "'when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process[,]"'" even when it is alleged that they acted in bad faith and pursuant to a conspiracy.  *Tapp v. Champagne*, 164 F. App'x 106, 108 (2d Cir. 2006) (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976))) ("[S]ince absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity.") (internal quotation marks omitted) (quoting *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir.1987)); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.' . . . Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages.") (quoting *Imbler*, 424 U.S. at 431 n.34).  Plaintiff's "pleadings, even when viewed in the light most favorable to him, are insufficient to pierce the absolute immunity that shields a prosecutor's decision to initiate and pursue criminal charges[] . . . ." *Tapp*, 164 F. App'x at 108  (citing *Bernard*, 356 F.3d at 503).  Thus, despite the fact that Milza is not represented in the instant case and has not moved for summary judgment, plaintiff's claims against Milza are dismissed *sua sponte*. *See id.*  (affirming a district's court *sua sponte* dismissal of the plaintiff's claim on grounds of prosecutorial immunity).

III.     **False Arrest**

Turning to the present motion, Golding and Rogan move to dismiss plaintiff's claim against them for false arrest, arguing that Golding had probable cause to make the arrest.  The Second Circuit explained in *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), that to prevail on a claim for false arrest under New York law, a plaintiff must demonstrate that: (1) he was intentionally confined; (2) he was conscious of the confinement; (3) he was confined without consent; and (4) no privilege justified his confinement.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law[] . . . ."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  Under both § 1983 and New York law, probable cause constitutes a complete defense to a claim for false arrest.  *See id.*; *Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005).

Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  *See Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999).  The existence of probable cause is based on the totality of the circumstances and is determined objectively – the officer's subjective belief at the time of arrest is irrelevant.  *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).  A probable cause determination must be made by considering what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.  *See Maron v. County of Albany*, 166 F. App'x 540, 542 (2d Cir. 2006); *Fox v. City*

*of New York*, No. 03 Civ. 2268, 2004 U.S. Dist. LEXIS 6844, at \*14-15 (S.D.N.Y. Apr. 20, 2004).

"The question of whether or not probable cause existed may be determinable as a matter of law if

there is no dispute as to the pertinent events and the knowledge of the officers . . . ."  *Maron*, 166

F. App'x at 542 (internal quotation marks omitted) (quoting *Weyant*, 101 F.3d at 852).

In the present case, the parties do not dispute the nature of the information relied upon by

Golding to justify plaintiff's arrest, and it is beyond doubt that he had probable cause.  Specifically,

the complainant provided a detailed statement to Golding and a supporting deposition describing the

course of events and identifying plaintiff as the assailant, which Golding had no apparent reason to

disbelieve.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is

received from a putative victim or an eyewitness, probable cause exists [] unless the circumstances

raise doubt as to the person's veracity[.]") (citing *Martinez*, 202 F.3d at 634; *Singer*, 63 F.3d at 119

(finding probable cause to arrest based on an eyewitness's supporting deposition)); *see also Maron*,

166 F. App'x at 542 ("'[a]n arresting officer advised of a crime by a person who claims to be the

victim, and who has signed a complaint or information charging someone with the crime, has

probable cause to effect an arrest absent circumstances that raise doubts as to the victim's

veracity.'") (alternations in original) (quoting *Singer*, 63 F.3d at 119); *Smith v. City of New York*, 388

F. Supp. 2d 179, 185 (S.D.N.Y. 2005) (finding probable cause when a rape victim described the rape

in detail and identified her alleged assailant).  Moreover, although we believe that the complainant's

statements and supporting deposition were alone sufficient to give rise to probable cause to arrest

plaintiff, Golding also reviewed the SANE report prior to the arrest, which indicated that the

complainant had injuries consistent with that of a rape victim.[9]  *See supra* p. 4.  Accordingly, the

record demonstrates a multitude of circumstances that, taken together, undoubtedly give rise to

probable cause to arrest plaintiff.

Plaintiff argues, however, that further investigation by Golding would have uncovered

exculpatory evidence that ultimately was revealed at trial.  Specifically, plaintiff emphasizes that

Christina Hitte, a friend of the complainant who was at the motel on the night in question, testified

at the criminal trial that she saw Reinhardt repeatedly punch the complainant in the arms after she

returned from plaintiff's house, presumably in an attempt to fabricate evidence of rape.  (*See* Pl. Sur-

Reply Mem. Opp. Summ. J. at 2, Ex. A (Hitte Tr., pp. 7-8).)  However, the record reveals that

Golding questioned Hitte on at least two occasions prior to the criminal trial,[10] and she never

provided him with this information.  (*See id.* (Hitte Tr., pp. 11-12).)  Indeed, no evidence exists that

anyone from the New York State Police had knowledge of such information, including defendants,[11]

and it appears that the District Attorney's office did not learn of it until trial, at which time Hitte's

_____

[9] Plaintiff emphasizes that the nurse who conducted the SANE examination opined that the complainant's injuries were not necessarily caused by forcible rape.  (*See* Pl. Sur-Reply Mem. Opp. Summ. J., Ex. B (Ptak Aff. lines 14-16).)  Although it is not at all clear that the nurse in fact came to this conclusion, the record contains no evidence that she communicated this opinion to Golding or anyone else for that matter, and she herself is "unsure if [she] discussed other causes of the identified injuries" with the police or prosecutors.  (*See id.* (Ptak Aff. lines 10-11).)  Moreover, any such conclusion, if reached, merely suggests the possibility that, although sexual intercourse occurred, it was consensual.  Clearly, the existence of injuries consistent with either consensual intercourse or forcible rape supports the complainant's version of events.

[10] Hitte testified that Golding questioned her on February 10, 2004 – two days after the arrest – and on April 30, 2004.  (*See* Pl. Sur-Reply Mem. Opp. Summ. J., Ex. A (Hitte Tr., pp. 11-12).)

[11] Hitte testified that she did not share this information until August 18, 2004, at which time she told an investigator working for Martinez's criminal defense counsel.  (*See* Pl. Sur-Reply Mem. Opp. Summ. J., Ex. A (Hitte Tr., p. 10).)

credibility was in serious doubt.[12] (*See id.* (Hitte Tr., pp. 10-12).)  Plainly, this subsequent statement has no consequence as to whether Golding had probable cause to arrest plaintiff in February of that year.  *See, e.g.*, *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) ("Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it.").

Additionally, plaintiff argues that Golding's investigation was superficial and overlooked "obvious inconsistencies" that cast doubt on the complainant's credibility.  First, plaintiff points out that Golding failed to interview material witnesses, including plaintiff's father, who was in the house at the time of the alleged rape, and one of the complainant's friends who was at the motel that same night.  Second, plaintiff emphasizes that Golding did not inspect plaintiff's house or attempt to retrieve the complainant's underwear, which she claimed that she had left in plaintiff's bedroom on the night of the alleged rape.  Third, he contends that the bruising on the complainant's arms was not consistent with her allegation that she was held down by her arms, as the bruising did not contain any finger impressions.  Finally, plaintiff asserts that the complainant's allegation that she did not scream while being raped is not credible, considering she knew that plaintiff's father was home.

Plaintiff's arguments are unavailing.  The facts remain that, prior to plaintiff's arrest, the alleged rape victim provided Golding with a detailed statement describing the crime, including the identity of plaintiff, signed a supporting deposition and underwent a SANE examination revealing

---

[12] The fact that Hitte did not convey this information to anyone until the eve of trial after being questioned by investigators on numerous occasions casts serious doubt upon her credibility. (*See id.* (Hitte Tr., pp. 10-12).)  In addition, the District Attorney's office may have had other reasons to doubt the veracity of her testimony, as she may have been engaged in a romantic relationship with plaintiff.  (*See, e.g.*, *id.* (Hitte Tr., p. 11 ("Now, isn't it true that you are actually dating Michael Martinez?").)

10

injuries consistent with those of a rape victim.  At that point, Golding had probable cause to arrest

plaintiff.  As the Second Circuit has explained:

> [O]nce a police officer has a reasonable basis for believing there is probable cause,
> he is not required to explore and eliminate every theoretically plausible claim of
> innocence before making an arrest.
>
> Although a better procedure may [be] for the officers to investigate plaintiff's version
> of events more completely, the arresting officer does not have to prove plaintiff's
> version wrong before arresting him. Nor does it matter that an investigation might
> have cast doubt upon the basis for the arrest. Before making an arrest, if the arresting
> officer has probable cause, he need not also believe with certainty that the arrestee
> will be successfully prosecuted.

*Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (internal quotation marks and citations

omitted) (quoting *Curley*, 268 F.3d at 70); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123,

128 (2d Cir. 1997).  Taking into account the totality of the circumstances, it is indisputable that

Golding had probable cause to arrest plaintiff.  His false arrest claim must therefore fail.


IV.   **Malicious Prosecution**

Plaintiff's malicious prosecution claims are doomed to suffer a similar fate, for it is equally

well established that a finding of probable cause defeats a claim for malicious prosecution.  *See*

*Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) ("To demonstrate a malicious

prosecution claim under Section 1983 or New York law, [a plaintiff] must show '. . . that there was

no probable cause for the proceeding . . . .'") (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.

2003)); *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("To establish a malicious prosecution

claim under [§ 1983 or] New York law, a plaintiff must show that a proceeding was commenced or

continued against him, with malice and without probable cause, and was terminated in his favor.")

(citations omitted).  As stated previously, Golding had probable cause to arrest plaintiff and, "[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Williams v. City of New York*, No. 02 Civ. 3693, 2003 U.S. Dist. LEXIS 19078, at *16 (S.D.N.Y. Oct. 23, 2003) (internal quotation marks omitted; citation omitted); *see also Johnson*, 221 F. App'x at 50 ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'").  Plaintiff puts forth no evidence as to how the probable cause that supported his arrest dissipated.  *See Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.").  Indeed, the only intervening event between plaintiff's arrest and prosecution was the DNA test confirming that plaintiff and the alleged victim had in fact had sexual intercourse on the day of the alleged rape.  *See Rizzo v. Edison, Inc.*, 172 F. App'x 391, 393 (2d Cir. 2006) ("As no exculpatory evidence became known after Plaintiff's arrest, there was also probable cause to prosecute her.") (footnote omitted).  In support of his claim, plaintiff merely argues that, because Golding lacked probable cause to arrest him, no probable cause existed to prosecute him.  We, of course, have already rejected that argument.[13]

---

[13] Plaintiff also fails to put forth evidence of malice on the part of defendants – an essential element of a malicious prosecution claim.  *See, e.g.*, *Johnson*, 221 F. App'x at 50 (quoting *Kinzer*, 316 F.3d at 143).  Moreover, "'[i]f [a] plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith.'"  *Ramashwar v. City of New York*, No. 06-0606 CV., 2007 WL 1290233, at * 1 (2d Cir. May 3, 2007) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (1983)).  Although plaintiff was indicted, he has offered no evidence to permit a reasonable factfinder to resolve this issue in his favor.

**V.      Conspiracy to Violate Plaintiff's Constitutional Right to be Free From Unreasonable Seizures Guaranteed by the Fourth Amendment**

In order to prove a conspiracy claim under § 1983, a plaintiff must demonstrate: "(1) an agreement between two or more state actors or a state actor and a private party[;] (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006). Accordingly, to succeed in a § 1983 conspiracy claim, a plaintiff must prove not only a conspiracy, but an *actual deprivation* of a constitutional right. *See id.*; *see also Singer*, 63 F.3d at 119. Thus, even if we assume the accuracy of plaintiff's conspiracy allegations, our conclusion that there was probable cause to arrest and prosecute plaintiff is fatal to his claim. *See, e.g.*, *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("a plaintiff is not entitled to damages under § 1983 . . . so long as the arrest itself was supported by probable cause . . . .").

Although we are sympathetic to plaintiff's claim of innocence, our system of justice does not, and cannot, require police officers to be convinced, beyond a reasonable doubt, of a suspect's guilt prior to arrest and prosecution. Such a standard is appropriate only when a judge or jury is charged with the task of determining a criminal defendant's guilt. As the Second Circuit has noted:

> It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. . . . Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.

*Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (internal citation omitted). Accordingly, because there was probable cause to arrest and prosecute plaintiff for rape in the first degree, his claims against Golding and Rogan for false arrest, malicious prosecution and conspiracy to violate

13

his constitutional right must be dismissed.

## CONCLUSION

For the foregoing reasons, the motion filed by defendants Jan Golding and Michael Rogan for summary judgment pursuant to FED. R. CIV. P. 56 seeking the dismissal of plaintiff's claims against them is granted. Furthermore, plaintiff's claims against defendant Michael Milza are also dismissed *sua sponte*. Accordingly, the Clerk's Office is directed to enter judgment in favor of defendants, dismissing the Complaint in its entirety, with prejudice and without costs or attorneys' fees.

SO ORDERED.
Dated:  White Plains, New York
        July 27, 2007

William C. Conner
Sr. United States District Judge

14